IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CIMC RAFFLES OFFSHORE (SINGAPORE)
PTE. LTD., and YANTAI CIMC RAFFLES
OFFSHORE LTD.,

       Petitioners,

- against -

SORATU DRILLING LLC and
BAERFIELD DRILLING LLC,

       Respondents.



14 Civ. _____

14 CV 2279

## DECLARATION OF LUI YEN CHOW IN SUPPORT OF CIMC RAFFLES'S PETITION SEEKING ATTACHMENTS IN AID OF ARBITRATION

I, LUI YEN CHOW, declare as follows:

  1.  I am Head, Legal Department, for Petitioners CIMC Raffles Offshore (Singapore) Pte. Ltd. and Yantai CIMC Raffles Offshore Ltd. (collectively, "CIMC Raffles"). I make this affidavit on personal knowledge and based on my review of business records maintained in the ordinary course of business, in support of CIMC Raffles's Petition seeking attachments against respondents Soratu Drilling LLC ("SDL") and Baerfield Drilling LLC ("BDL").

  2.  CIMC Raffles is seeking attachments to secure arbitration awards that it will shortly obtain against SDL and BDL in arbitrations pending in London (the "UK Arbitrations"), to prevent those arbitration awards from being rendered ineffectual.

  3.  CIMC Raffles believes it will prevail on the merits in the UK Arbitrations because it previously received Interim Final Awards in the UK Arbitrations, and also prevailed in a prior related arbitration in New York and obtained a Consent Judgment against Schahin Holding S.A. for over $67,000,000 in a related High Court proceeding in the UK.

4. Like the Interim Final Awards previously awarded by the UK arbitrators, CIMC Raffles's remaining claims, totaling more than $142 million, derive from monies SDL and BDL respectively owe to CIMC Raffles under two Shipbuilding Contracts, each dated July 12, 2006 (as amended), for the construction of the SS Pantanal and the SS Amazonia offshore self-propelled drilling platforms (the "Vessels").

5. In particular, CIMC Raffles is seeking in the aggregate more than $142 million in additional payments owed on account of SDL's and BDL's failures to pay sums due under the Shipbuilding Contracts, namely, (i) payment of the final installment payments due under the Shipbuilding Contracts, (ii) certain Deferred Payments (as defined), and (iii) contractual interest.

6. CIMC Raffles delivered the SS Pantanal to SDL on November 15, 2010. At the time of delivery, CIMC Raffles provided SDL with a final invoice.

7. Without any reservations, SDL accepted the delivery of the SS Pantanal and signed the delivery documents and the final invoice, thus confirming its satisfaction with the completeness of the vessel and the total due under the SDL Shipbuilding Contract, and agreeing to pay the remaining sums due.

8. CIMC Raffles delivered the SS Amazonia to BDL on April 25, 2011. At the time of delivery, CIMC Raffles provided BDL with a final invoice.

9. Without any reservations, BDL accepted the delivery of the SS Amazonia and signed the delivery documents and the commercial invoice, thus confirming its satisfaction with the completeness of the vessel and the total due under the BDL Shipbuilding Contract, and agreeing to pay the remaining sums due.

10. However, after delivery of the Vessels, SDL and BDL stopped making any further payments. Accordingly, in late 2011, CIMC Raffles commenced the UK Arbitrations against SDL and BDL.

11. In the SDL arbitration, CIMC Raffles is seeking $82,136,319.16 (through March 31, 2014), plus 12% contractual interest after March 31, 2014; in the BDL arbitration CIMC Raffles is seeking $60,279,501.11 (through March 31, 2014), plus 12% contractual interest after March 31, 2014.

12. CIMC Raffles is filing this motion now because, among other things, SDL and BDL are in the process of re-financing (in a single transaction) their principal assets, the SS Pantanal and the SS Amazonia, respectively.

13. On information and belief, SDL and BDL intend to apply the charter payments made by Petróleo Brasileiro S.A. (Petrobras) for the Vessels, to re-finance the existing senior debt secured by the Vessels, and to secure additional debt, leaving little or no equity in the Vessels or other assets by which SDL or BDL could pay the debts owed to CIMC Raffles.

14. Amendments to each of the Shipbuilding Contracts (the Eleventh Amendment to the SDL Shipbuilding Contract and the Seventh Amendment to the BDL Shipbuilding Contract) provide that SDL and BDL were to have established revenue accounts funded by charter payments for the Vessels, to secure the debts that they owe to CIMC Raffles for the Vessels. SDL and BDL never created or funded any such revenue accounts. Instead, as SDL and BDL have testified, all charter payments from Petrobras are made to accounts at Deutsche Bank Trust Company Americas, where they secure debts owed to the bank lenders.

15. The anticipated re-financing of the Vessels will not be the first time that SDL and BDL have re-financed the Vessels. CIMC Raffles commenced the UK Arbitrations at the end of 2011. At that time, according to a lien search that was conducted at my request by Panamanian counsel, each of the Vessels had $920 million in First and

Second Preferred Ship Mortgages. On July 23, 2013, one and a half years after the commencement of the UK Arbitrations, SDL caused an additional $26 million secured lien (Second Preferred Ship Mortgage) to be filed against the SS Pantanal in Panama, where the Vessels are registered, and BDL caused an additional $26 million secured lien to be filed against the SS Amazonia, totaling an additional $52 million in secured liens.

16. Each of the SS Pantanal and the SS Amazonia now has recorded liens against it in Panama totaling $946 million (i.e., $1,892,000 in total liens). Any equity remaining in the Vessels is likely to be exhausted by the re-financing contemplated by SDL and BDL.

17. Finally, CIMC Raffles's claims exceed the amount of all meritorious counterclaims asserted by SDL and BDL.

18. CIMC Raffles's remaining claims in the UK Arbitrations total approximately $142 million as of March 31, 2014.

19. SDL and BDL asserted counterclaims against CIMC Raffles in the UK Arbitrations: contract claims (which were dismissed), fraud claims (which were withdrawn), and claims for "misrepresentation," because CIMC Raffles allegedly did not have sufficient capacity or capability to build the two Vessels on time.

20. CIMC Raffles denies the vast majority of SDL's and BDL's counterclaims and vigorously disputes that it did not have sufficient capacity or capability to build the two Vessels. To the extent that any counterclaims by SDL and BDL may have any validity, they amount to less than half a million dollars.

21. CIMC Raffles is one of the largest shipyards in the world. It has the world's largest gantry cranes, named the "Taisun," one of the world's largest pedestal cranes, and a 300,000 ton dry dock. It has nearly 4,000 employees, and another 8,000 sub-

4

contracted employees.

22. CIMC Raffles is one of the world's leading shipyards for production of oil tankers, oilfield tenders, and other vessels for the offshore energy market. It produces semi-submersible self-propelled drilling rigs (like the two Vessels), jack-up drilling rigs, multi-purpose drillships, pipe laying vessels, and floating production storage and offloading vessels. To date, CIMC Raffles has completed nine semi-submersible drilling rigs, including drilling rigs used globally, including in the harsh conditions of the North Sea. CIMC Raffles currently is building multiple rigs, including the world's largest ultra-deepwater semi-submersible drilling rig with dual drilling towers; a harsh environment ice class semi-submersible drilling rig designed to operate in the North Sea and other challenging regions (such as the Arctic and the Barents Sea); and a multi-purpose drillship designed for operations globally, including in the North Sea, for a Norwegian drilling contractor.

23. No previous application for the relief sought herein has been made to this or any court. A previous application was made in New York State court for an attachment in aid of a related New York arbitration, which application was denied based on the testimony of Fernando Schahin that all final judgments or awards would be promptly paid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 1st, 2014

_____
LUI YEN CHOW