UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

CIMC RAFFLES OFFSHORE (SINGAPORE) PTE.
LTD. and YANTAI CIMC RAFFLES OFFSHORE
LTD.,

                    Petitioners,

           v.

SORATU DRILLING LLC and BAERFIELD
DRILLING LLC,

                    Respondents.

----------------------------------------------------------------x

14 Civ. 2279 (JSR)

**ECF CASE**
**Electronically Filed**

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF RESPONDENTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FORUM NON CONVENIENS

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.    RESPONDENTS ARE NOT SUBJECT TO GENERAL OR SPECIFIC PERSONAL
      JURISDICTION IN NEW YORK ....................................................................................... 2

      A.    This Court Must Reconsider The Issue Of General Personal Jurisdiction Post-
            Daimler ........................................................................................................................ 3

      B.    Respondents' Participation In Financing In New York Has No Articulable
            Nexus To Petitioners' Claims And Cannot Be A Basis For A Finding Of
            Specific Personal Jurisdiction .................................................................................... 6

II.   THE UK OR DELAWARE ARE MORE APPROPRIATE FORUMS FOR THIS
      DISPUTE ............................................................................................................................. 8

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page

## CASES

Daimler AG v. Bauman,
134 S. Ct. 746 (2014) .................................................................................................. Passim

Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.,
850 N.E.2d 1140 (N.Y. 2006) ................................................................................................ 6

Deutsche Zentral-Genossenschaftsbank AG v. UBS AG,
No. 652575/2012, 2014 WL 1495632 (N.Y. Sup. Ct. Apr. 17, 2014) .......................................... 3

Goodyear Dunlop Tires Operations, S.A. v. Brown,
131 S. Ct. 2846 (2011) ........................................................................................................... 3

Helicopteros Nacionales de Colombia, S.A. v. Hall,
466 U.S. 408 (1984) ............................................................................................................... 5

Iragorri v. United Techs. Corp.,
274 F.3d 65 (2d Cir. 2001) ...................................................................................................... 8

J.L.B. Equities, Inc. v. Ocwen Fin. Corp.,
131 F. Supp. 2d 544 (S.D.N.Y. 2001) ................................................................................... 6, 7

Masonite Corp. v. Hellenic Lines, Ltd.,
412 F. Supp. 434 (S.D.N.Y. 1976) .......................................................................................... 5

Mattgo Enters., Inc. v. Aaron,
374 F. Supp. 20 (S.D.N.Y. 1974) ............................................................................................ 7

McGowan v. Smith,
419 N.E.2d 321 (N.Y. 1981) ................................................................................................... 6

Meyer v. Bd. of Regents of Univ. of Okla.,
No. 13 CIV. 3128 CM, 2014 WL 2039654 (S.D.N.Y. May 14, 2014) .......................................... 4

Perkins v. Benguet Consol. Mining Co.,
342 U.S. 437 (1952) ............................................................................................................... 5

Photoactive Prods., Inc. v. AL-OR Int'l Ltd.,
99 F. Supp. 2d 281 (E.D.N.Y. 2000) ................................................................................... 8, 10

In re Roman Catholic Diocese of Albany, N.Y., Inc.,
745 F.3d 30 (2d Cir. 2014) ................................................................................................... 4, 5

In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,
230 F. Supp. 2d 376 (S.D.N.Y. 2002) ............................................................................................. 8

Sonera Holding B.V. v. Cukurova Holding A.S.,
No. 12-4280-CV L, 2014 WL 1645255 (2d Cir. Apr. 25, 2014) ..................................................... 4

Talbot v. Johnson Newspaper Corp.,
522 N.E.2d 1027 (N.Y. 1988) ........................................................................................................ 6

United Rope Distribs., Inc. v. Kimberly Line,
770 F. Supp. 128 (S.D.N.Y. 1991) ................................................................................................. 4

United Trading Co. S.A. v. M.V. Sakura Reefer,
No. 95 Civ. 2846 SAS, 1996 WL 374154 (S.D.N.Y. July 2, 1996) ............................................... 4

## RULES

N.Y. C.P.L.R. 302 ......................................................................................................................... 6

## OTHER AUTHORITIES

David D. Siegel, Siegel's Practice Review, Vol. 265, Jan. 2014, available at Westlaw 265
Siegel's Prac. Rev. ......................................................................................................................... 3

## PRELIMINARY STATEMENT

Petitioners' argument that they only seek relief in New York for assets held in this state is disingenuous at best, as they ask this Court to extend its reach and encumber entities and assets not only in other states (Delaware), but also in other countries (Brazil). Petitioners' requested relief must comport with fundamental due process principles, including a constitutionally sound finding of personal jurisdiction over the Respondents. By invalidating the "doing business" test, the U.S. Supreme Court's recent decision in Daimler AG v. Bauman, 134 S. Ct. 746 (2014), abrogated this Court's finding from last year that Respondents are subject to general personal jurisdiction in New York. The "at home" formulation that the Supreme Court articulated in place of the "doing business" test is a much stricter standard; unless a corporation is domiciled or has its principal place of business in a jurisdiction, it may be found subject to general personal jurisdiction in that forum only in "exceptional case[s]" where its activities render it "at home" there. Daimler, 134 S. Ct. 761 n.19. Analyzed in this context, the six bank accounts held in Respondents' name in New York, respectively, are a small portion of their business and assets, and do not establish the contacts necessary to find Respondents "at home" here. Similarly unpersuasive is Petitioners' argument that this Court may find specific personal jurisdiction over Respondents through their participation in a project financing to which Petitioners are not a party, as that transaction and this cause of action bear no substantial relationship.

Petitioners could easily satisfy the important due process question of personal jurisdiction by bringing suit in Delaware, Respondents' place of incorporation. However, Delaware courts will not provide Petitioners the relief that they seek, and their choice to bring this Petition in New York is an obvious attempt to side-step this issue. Both the UK and Delaware have substantially greater interests than New York in adjudicating this dispute, and are

therefore more appropriate forums.  The UK has a strong interest in ensuring its arbitrations are conducted as efficiently and expeditiously as possible, and that uniform standards are applied in determining whether pre-award attachment is warranted.  Delaware also has a significant interest in protecting its citizens from an extraordinary harsh remedy, especially one not available in the Third Circuit.

New York, on the other hand, does not have a *bona fide* interest in this dispute. First, any evidence from third-party lenders is limited to the Black Gold project financing, a fact which is undisputed, and which is irrelevant to the central issue of whether an award would otherwise be rendered ineffectual.  Second, although this Court has previously adjudicated summary proceedings, such as recognition and enforcement of a judgment, the instant Petition for pre-award attachment would necessitate a much more comprehensive, fact-intensive inquiry involving extensive witness testimony and documents.  Given the overriding interests of alternate forums, this Court should not condone Petitioners' forum shopping and should instead dismiss the dispute on *forum non conveniens* grounds (so that it may be refiled in the UK) or alternatively transfer this proceeding to Delaware or apply Third Circuit law.

**ARGUMENT**

## I.    RESPONDENTS ARE NOT SUBJECT TO GENERAL OR SPECIFIC PERSONAL JURISDICTION IN NEW YORK

By stating that the "doing business" test is constitutionally suspect, the U.S. Supreme Court's decision in <u>Daimler AG. v. Bauman</u> has narrowed the grounds for subjecting a defendant to general personal jurisdiction.  In light of <u>Daimler</u>, Respondents are not subject to general personal jurisdiction in New York as their contacts do not rise to the "exceptional case" necessary to constitute them being "at home" in this State.  134 S. Ct. 761 n.19.  Any contacts that Respondents have in New York through their participation in the Black Gold financing do

2

not provide necessary grounds for asserting specific personal jurisdiction, as these contacts bear

no substantial relationship to this Petition, the Shipbuilding Contracts, or the UK Arbitrations.[1]

### A.    This Court Must Reconsider The Issue Of General Personal Jurisdiction Post-<u>Daimler</u>

The U.S. Supreme Court's recent decision in <u>Daimler AG v. Bauman</u> has

fundamentally changed the rubric under which this Court previously found the Respondents

subject to general personal jurisdiction in New York.  Following the Supreme Court's decision in

<u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 131 S. Ct. 2846 (2011), the "doing business"

test was still a valid basis for asserting personal jurisdiction over a foreign defendant.  David D.

Siegel, <u>Siegel's Practice Review</u>, Vol. 265, Jan. 2014, <u>available at</u> Westlaw 265 Siegel's Prac.

Rev. (noting the <u>Goodyear</u> decision "as presaging <u>Daimler</u>" and stating that "until <u>Daimler</u>, most

American jurisdictions, including New York, retained the 'doing business' . . . test").  In

<u>Daimler</u>, while affirming its holding in <u>Goodyear</u>, the Court went further and observed that the

"doing business" test "should not attract heavy reliance today" as a basis on which to exercise

general personal jurisdiction.  <u>Daimler</u>, 134 S. Ct. at 761 n.18.

The Petitioners acknowledge that an intervening change of law prevents the

application of collateral estoppel.  Petitioner's Opposition at 5.  Because it invalidated the "doing

business" test—the very basis on which this Court previously found Respondents to be subject to

general personal jurisdiction in New York—<u>Daimler</u> plainly qualifies as an intervening change

of law.  <u>See</u> <u>Deutsche Zentral-Genossenschaftsbank AG v. UBS AG</u>, No. 652575/2012, 2014

WL 1495632, at *4 (N.Y. Sup. Ct. Apr. 17, 2014) (stating that the parties had briefed and argued

the motion to dismiss for lack of personal jurisdiction pre-<u>Daimler</u> and that <u>Daimler</u> now "calls

---

[1]    Capitalized terms used but not defined herein have the meaning ascribed to them in Respondents' Motion to Dismiss.

into question the validity of the doing business doctrine," but declining to rule on the issue because it was not properly briefed before the court.) Indeed, this Court has observed that the "'at home in' formulation of <u>Daimler</u> calls into the question the notion that 'doing business in' New York—the traditional formulation of the CPLR 301 test—is constitutionally compliant." <u>Meyer v. Bd. of Regents of Univ. of Okla.</u>, No. 13 CIV. 3128 CM, 2014 WL 2039654, at *4 (S.D.N.Y. May 14, 2014); <u>Sonera Holding B.V. v. Cukurova Holding A.S.</u>, No. 12-4280-CV L, 2014 WL 1645255, at *5 (2d Cir. Apr. 25, 2014) (noting the "tension between <u>Daimler</u>'s 'at home' requirement and New York's 'doing business' test for corporate 'presence'"). Consequently, this Court's pre-<u>Daimler</u> finding that Respondents are subject to general jurisdiction in New York based on the "doing business" test must be reconsidered.

The presence of six bank accounts each held in Respondents' names in New York—Petitioners' sole ground for asserting general jurisdiction—does not rise to a level of contacts "so 'continuous and systematic' as to render [the Respondents] essentially at home in [New York]." <u>Daimler</u>, 134 S. Ct. at 761. The "at home" standard enunciated in <u>Daimler</u> requires a court to examine "a corporation's operations" in their totality. <u>Id.</u> 134 S. Ct. at 761 n.19. This Court's prior finding was predicated only on the presence of bank accounts in New York and not the entirety of Respondents' business, as the "doing business" test allowed for the exercise of general personal jurisdiction based on this sole factor. <u>See</u> <u>United Rope Distribs., Inc. v. Kimberly Line</u>, 770 F. Supp. 128 (S.D.N.Y. 1991); <u>cf.</u> <u>United Trading Co. S.A. v. M.V. Sakura Reefer</u>, No. 95 Civ. 2846 , 1996 WL 374154 (S.D.N.Y. July 2, 1996).

In a recent decision, the Second Circuit delineated the high threshold to find a corporation "at home" in a state other than its place of incorporation or principal place of business. <u>See</u> <u>In re Roman Catholic Diocese of Albany, N.Y., Inc.</u>, 745 F.3d 30, 40 (2d Cir.

2014).  Analyzing the Supreme Court's prior holding in Helicopteros Nacionales de Colombia,

S.A. v. Hall, 466 U.S. 408, 416 (1984), in light of the "at home" requirement in Daimler, the

Second Circuit found that although "the defendant contracted in, sent employees to, and used

banks in the forum [it] was still not 'at home' there."  In re Roman Catholic Diocese of Albany,

N.Y., Inc., 745 F.3d at 39-40 (also comparing the "at home" standard to Perkins v. Benguet

Consolidated Mining Co., 342 U.S. 437, 447–48 (1952), which was cited by the Court in

Daimler and where "a foreign Philippine mining corporation . . . had ceased all mining activities

abroad" and, thus, was "at home" in Ohio since "[i]ts only business at the time of suit was done

in [the forum State]").

        Placing the Respondents' mere six bank accounts each in New York in this

context—and particularly when viewed against their ownership, chartering, and operation of two

drilling vessels which are located and operated off the coast of Brazil—there are no grounds for

finding that Respondents are "at home" in New York.  As previously described by Respondents,

five of these accounts are dormant and the sole active account automatically receives charter

payments from Petrobras, immediately transferred by Deutsche Bank (as Depositary and with

sole control over the project finance accounts) to an account held by third-party Black Gold.

Declaration of Fernando Schahin in Further Support of Respondents' Motion to Dismiss for

Lack of Personal Jurisdiction and Forum Non Conveniens ("Schahin Dec'l") ¶¶ 3-4; see

Masonite Corp. v. Hellenic Lines, Ltd., 412 F. Supp. 434, 438 (S.D.N.Y. 1976) (finding no basis

for general jurisdiction where monies from New York bank account were immediately credited

to London bank).  Moreover, these accounts are a small portion of Respondents' assets and their

business.  Unlike in Perkins, Respondents' continuing business, including their contracts with

Petrobras to charter the S.S. Amazonia and the S.S. Pantanal, occurs in their principal place of

business, Brazil.  In addition, these vessels, which are located and operated in Brazil, are the vast

majority of the Respondents' assets, totaling approximately $1.3 billion.  Schahin Dec'l ¶ 2;

Declaration of Fernando Schahin [ECF No. 19] ("May 15th Schahin Dec'l") ¶¶ 32-33; see J.L.B.

Equities, Inc. v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 548 (S.D.N.Y. 2001) (finding no

general personal jurisdiction when the assets held in a custodial New York bank account were

significantly less than the out-of-state corporation's $3.3 billion in assets).  Based on these

factors, and the high bar set by the Supreme Court's "at home" standard, Petitioners have not

demonstrated the "exceptional" circumstances necessary to subject Respondents to general

personal jurisdiction in New York.  See Daimler, 134 S. Ct. at 761 n.19.

###   B.   Respondents' Participation In Financing In New York Has No Articulable Nexus To Petitioners' Claims And Cannot Be A Basis For A Finding Of Specific Personal Jurisdiction

There is no merit to Petitioners' argument that Respondents are subject to specific

personal jurisdiction in New York based on a financing to which the Petitioners are not a party

and that bears no substantial relationship to the cause of action underlying this pre-award

attachment petition.  To establish specific jurisdiction under N.Y. C.P.L.R. 302(a)(1), an

articulable nexus or substantial relationship must exist between the business transacted and the

cause of action sued upon.  See McGowan v. Smith, 419 N.E.2d 321, 323 (N.Y. 1981); Talbot v.

Johnson Newspaper Corp., 522 N.E.2d 1027, 1028-29 (N.Y. 1988) (holding that there must be "a

'substantial relationship' between [the purposeful] activities and the transaction out of which the

cause of action [arises].").  The sole case cited by Petitioners clearly demonstrates the necessity

for such a substantial connection between the cause of action and the transaction articulated by

Petitioners for specific jurisdiction, as the plaintiff's cause of action in that case arose from a

transaction between the plaintiff and the defendant.  See Deutsche Bank Sec., Inc. v. Montana

Bd. of Invs., 850 N.E.2d 1140, 1143 (N.Y. 2006).

Petitioners' claims in this pre-award attachment petition or the underlying UK Arbitrations do not arise out of the Black Gold financing. Petitioners list a litany of actions by Respondents in New York related to the Black Gold financing, but fail to demonstrate how these bear a relation—let alone a substantial relation—to this pre-award attachment petition, the UK Arbitrations, or the underlying Shipbuilding Contracts. Petitioners are not a party to any of the Black Gold project financing contracts, which are primarily between Black Gold, the Respondents, and the Senior Lenders. See Declaration of Joseph P. Moodhe in Support of CIMC Raffles' Petition Seeking Attachments in Aid of Arbitration ("Moodhe Dec'l") Ex. A at 1. In contrast, the Shipbuilding Contracts were entered into between the Petitioners and Respondents alone, one year prior to the Black Gold project financing contracts, and do not involve Black Gold, any of the Senior Lenders, or their Agents. Compare Schahin Dec'l Ex. A at 3; Schahin Dec'l Ex. B at 3 with Moodhe Dec'l Ex. A at 1. The primary ongoing activity in the Black Gold project are the receipt of funds from Petrobras that trigger the monthly waterfalls, and which are not paid to CIMC and over which CIMC has no claim under the Black Gold financing agreements or Shipbuilding Contracts. See Schahin Dec'l ¶ 4; May 15th Schahin Dec'l ¶¶ 27-28.

Consequently, any relationship between the Black Gold financing and the Shipbuilding Contracts, the UK Arbitrations, or this Petition, are too attenuated to constitute the articulable nexus necessary to support specific personal jurisdiction. See Mattgo Enters., Inc. v. Aaron, 374 F. Supp. 20, 23 (S.D.N.Y. 1974) (holding that to establish specific jurisdiction, "the cause of action must arise out of the act [and] that act must be related to the contract in suit"); J.L.B. Equities, Inc., 131 F. Supp. 2d at 551 (finding no articulable nexus where plaintiff sued on one contract (Asset Sale Agreement) and asserted specific jurisdiction based on another contract

7

(Fee Agreement), where plaintiff was not a party to the Fee Agreement, there was minimal connection between the two agreements, and the Fee Agreement did not mention the Asset Sale Agreement).

## II.    THE UK OR DELAWARE ARE MORE APPROPRIATE FORUMS FOR THIS DISPUTE

In light of the substantially reduced deference owed to Petitioners' choice of forum, and the balance of private and public factors which overwhelmingly weigh in favor of an alternate forum, this dispute should be adjudicated in the UK or Delaware.

Petitioners are not entitled to any deference for their choice of forum. The degree of deference owed depends on a number of factors. Iragorri v. United Techs. Corp., 274 F.3d 65, 71 (2d Cir. 2001). Where, as here, a foreign party brings suit in a U.S. court, it is less likely that the forum was chosen for convenience and instead, there is a "plausible likelihood . . . that the selection was made for forum-shopping reasons." Id. (citing more favorable remedies as an example of forum shopping). In their papers, Petitioners merely deny that they selected this Court for forum shopping reasons; this is plainly insufficient to overcome this presumption. See Petitioners' Opposition at 10.

Based on the UK and Delaware's substantial public policy interests alone, this Court should dismiss on *forum non conveniens* grounds. As previously briefed before this Court, Delaware has a strong interest in protecting its citizens, BDL and SDL, from extraordinarily harsh remedies, such as pre-award attachment, especially where such remedies are not available in the Third Circuit. See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 376, 391 (S.D.N.Y. 2002) (the district court for the Southern District of New York has a strong interest in resolving the claims of its own residents); Photoactive Prods., Inc. v. AL-OR Int'l Ltd., 99 F. Supp. 2d 281, 290 (E.D.N.Y. 2000) ("New York has an undeniable interest in

providing redress to its own citizens"). The UK, too, has a strong interest in maintaining its reputation as a mecca for international arbitration. To do so, it must conduct its arbitrations as efficiently and expeditiously as possible, minimize bifurcation of any ancillary proceedings, and apply uniform standards to determine whether pre-award attachment is warranted.

CIMC completely ignores these significant public policy reasons favoring the UK and Delaware as alternate forums. Instead, CIMC argues that this Court's prior adjudication of disputes between the parties, and the presence of third-party lenders in New York, militate in favor of the Southern District of New York. In doing so, CIMC overstates the connection between this Court's previous adjudication of summary proceedings, *i.e.*, the motions for recognition and enforcement of arbitral awards, and the instant motion, which seeks an extraordinarily harsh remedy of pre-award attachment, and which will necessitate a comprehensive fact-intensive inquiry involving extensive witness testimony and documents.[2]

CIMC's discussion of the private factors is also unhelpful because, without addressing the underlying elements of pre-award attachment, in order to identify the location of relevant witnesses and documents, it is impossible to assess the convenience to the parties. As pre-award attachment is an extraordinarily harsh remedy, and certainly one not warranted here, should this Court deny dismissal, Respondents would mount a vigorous defense to establish that an award would not otherwise be rendered ineffectual. Contrary to the summary proceedings previously before this Court, Respondents would present extensive testimony from creditors, financial experts, long-term customers, management, and shareholders about their timely satisfaction of debts, solvency, and liquidity, among other factors. Such evidence would be

---

[2]      Moreover, because the UK Tribunal and the UK High Court have expended significant resources adjudicating disputes between the parties over the past few years, the balance of these private factors would still weigh in favor of an alternate forum.

9

located either within BDL and SDL's domicile, Delaware, the UK, the site of ongoing proceedings (especially if the parties proceed to the quantum hearing which would involve many of the same witnesses), and Brazil, the home of related third-party Schahin Group companies.

Instead, CIMC unsuccessfully attempts to manufacture a New York connection based on the presence of third-party lenders in New York. The presence of these lenders, however, is irrelevant to the pertinent issue of whether an award would otherwise be rendered ineffectual. Any discovery from the lenders would be limited to the outstanding balance of the senior and subordinated debt, a fact which is undisputed by the parties.

At best, CIMC's assertions establish that New York is a "reasonable" forum; CIMC has not, however, demonstrated that the balance of factors weigh in favor of New York, rather than the UK or Delaware. For this reason, even where certain factors, such as the location of witnesses or operative facts, suggest that the petitioner's chosen forum is reasonable, courts have nonetheless dismissed on *forum non conveniens* grounds on the basis of overriding public policy considerations favoring an alternate forum. See e.g., Photoactive Prods., Inc., 99 F. Supp. 2d at 290 (dismissing on *forum non conveniens* grounds because of New York's undeniable interest in protecting its citizens, and despite the fact that witnesses, documents, and evidence were located in California). Because here, both private and public policy factors strongly favor the UK and Delaware, rather than New York, this Court should dismiss this Petition on *forum non conveniens* grounds, so that it may be re-filed in the UK. Alternatively, for these same reasons, this Court should transfer this proceeding to Delaware or apply Third Circuit law.

## CONCLUSION

For the reasons stated herein, and in the Motion to Dismiss, Respondents respectfully request that the Court dismiss CIMC's Petition for Attachments in Aid of Arbitration.

10

Dated:    New York, New York
          June 6, 2014

                              Respectfully submitted,

                              Linklaters LLP

                              By:    /s/ Paul S. Hessler
                              Paul S. Hessler
                              Patrick Ashby
                              1345 Avenue of the Americas
                              New York, NY 10105
                              (212) 903-9000
                              (212) 903-9100 (fax)

                              *Counsel for Baerfield Drilling LLC and Soratu
                              Drilling LLC*

11